# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GINA POOLE,<br><br>Plaintiff,<br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:16-cv-1053-JNP-BCW<br><br>District Judge Jill N. Parrish |

Before the court is Plaintiff Gina Poole's appeal from the Commissioner's decision denying her application for disability insurance benefits. For the reasons below, the Commissioner's denial is affirmed.

## I. BACKGROUND

Ms. Poole filed an application for disability benefits in February 2013, but the Social Security Administration denied her application initially and on reconsideration. Ms. Poole then requested a hearing before an administrative law judge (ALJ). That hearing occurred on February 10, 2015 before ALJ Barry Jenkins in Las Vegas, Nevada.

The ALJ evaluated Ms. Poole's claim using the familiar five-part sequential evaluation process. *See Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988). At step one, the ALJ determined that Ms. Poole did not engage in substantial gainful activity from her alleged onset date through her date last insured. At step two, the ALJ determined that Ms. Poole had the following severe impairments: disorder of the left ankle—status post gastroc slide, disorder of the lumbar spine, obesity, and depression. At step three, the ALJ concluded that Ms. Poole did

not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. At step four, the ALJ determined that Ms. Poole had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain limitations. And at step five, the ALJ concluded that Ms. Poole was capable of performing jobs that existed in significant numbers in the national economy. Therefore, the ALJ concluded that Ms. Poole was not disabled, as defined in the Social Security Act, from October 6, 2008 (the alleged onset date) through December 31, 2013 (the date Ms. Poole was last insured). On August 25, 2016, the Appeals Council denied Ms. Poole's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II. STANDARD OF REVIEW

In reviewing an appeal of a Social Security determination, the court considers "whether the factual findings are supported by substantial evidence in the record." *Joyce v. Barnhart*, 88 Fed. App'x 320, 324 (10th Cir. 2004). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989)). The court must examine the record closely to determine whether substantial evidence supports the Commissioner's determination, but the court may not "reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (citation omitted). The court also considers "whether the correct legal standards were applied." *Id.*

In steps one through four of the sequential evaluation, "[t]he claimant bears the burden of establishing a *prima facie* case of disability." *Id.* Once the claimant meets that burden, the burden of proof shifts to the Commissioner to show at step five that the claimant retains sufficient residual functional capacity to perform work in the national economy, given her age, education, and work experience. *Id.*

## III. DISCUSSION

On appeal, Ms. Poole argues that the ALJ erred in two regards: (1) the ALJ did not give controlling weight to the opinion of Ms. Poole's treating physician (Dr. Douglas Callahan), and (2) the ALJ failed to properly evaluate whether Ms. Poole's impairments met or equaled Listing 1.02.

### A. THE WEIGHT GIVEN TO DR. CALLAHAN'S OPINION

In social security disability cases, treating physicians may offer opinions regarding claimants' impairments. However, a treating physician's opinion that a claimant is disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Id.* at 325 (quoting *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)). Under the treating physician rule, "the agency will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Id.* However, "the agency will not give controlling weight to the medical opinion of a treating source unless the source's conclusion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)).

Here, Douglas Callahan, D.O., was one of Ms. Poole's treating physicians. He began seeing her in July 2010. In October 2014, he filled out a residual functional capacity assessment diagnosing Ms. Poole with left ankle and foot pain and chronic back pain. Under "prognosis," he indicated that Ms. Poole's condition "[h]as been getting worse" but that she "[h]ad surgery and [her] ankle has been better but is still painful." In estimating Ms. Poole's functional limitations, he indicated that she cannot walk a city block without rest or severe pain, that she cannot walk a block on rough or uneven ground, and that she cannot climb steps without use of a handrail at a reasonable pace. Furthermore, he indicated that she has problems with balance when ambulating

and problems stooping, crouching, and bending. Dr. Callahan opined that Ms. Poole must lie down for about three hours during an eight-hour workday and that she can sit for twenty minutes, stand for five minutes, and walk for five minutes. He further noted that she would require unscheduled breaks of five to ten minutes every twenty to thirty minutes and that she can lift or carry fifteen pounds or more only rarely. In Dr. Callahan's opinion, Ms. Poole's impairments, symptoms, and limitations probably lasted since 2009.

As the court noted above, two conditions must be met for a treating physician's opinion to be accorded controlling weight: (1) that opinion must be well supported by medical evidence, and (2) that opinion must be consistent with other substantial evidence. However, the ALJ found that Dr. Callahan's opinion met neither condition because it was "not consistent with the medical evidence and the claimant's activities." A.R. at 23. Ms. Poole argues that the ALJ erred in not giving controlling weight to Dr. Callahan's opinion because "nothing in [Ms. Poole's] testimony contradicts Dr. Callahan's opinions regarding Ms. Poole's residual functional capacity," and because "[t]he ALJ . . . failed to provide any other reasons for rejecting Ms. Poole's testimony." ECF No. 17 at 6. The court disagrees.

1. **Whether Dr. Callahan's opinion was well supported by medical evidence**

To be accorded controlling weight, Dr. Callahan's opinion must have been well supported by medical evidence. But there is substantial evidence to suggest that this was not the case. First and most apparent is this: in his residual functional capacity assessment, Dr. Callahan diagnosed Ms. Poole with left ankle and foot pain that he opined probably lasted since 2009. He also identified Ms. Poole's most significant clinical findings and objective signs as "has numbness on both thighs [and a] weak ankle." But Dr. Callahan's own notes from Ms. Poole's office visit on October 13, 2010 indicate that she was not experiencing any pain below her left knee when she was standing and that her gait was within normal limits. *See* A.R. at 252. And

4

records of Ms. Poole's visits to Dr. Callahan's office in July 2010, December 2010, April 2011, August 2011, February 2012, October 2012, and July 2013 consistently describe a normal gait and omit any mention of ankle pain. In fact, Ms. Poole's medical record does not suggest that she complained to Dr. Callahan of ankle pain until November 2013, at which point he noted that she was "affected by a left leg limp" and had pain with range of motion in "left ankle inversion and eversion."

Furthermore, Dr. Callahan's general opinion that Ms. Poole's limitations probably dated to 2009 contradicted records kept by other physicians Ms. Poole visited. In fact, Ms. Poole's comprehensive medical records do not reflect any limitation due to ankle pain until May 2013, when Ms. Poole reported in an exam that she could stand for only ten minutes because of back pain and ankle pain.

In sum, Dr. Callahan's opinion that Ms. Poole had probably experienced and had been limited by left ankle and foot pain since 2009 flatly contradicted his own physical exam findings, his own records, and Ms. Poole's comprehensive medical record. Therefore, substantial evidence in the record supports the ALJ's determination that Dr. Callahan's opinion was not supported by medical evidence.[1]

---

[1] Ms. Poole argues that the ALJ "failed to provide substantial evidence to support his rejection of a treating physician opinion." ECF No. 20 at 4. While it is true that the ALJ devoted only three sentences explaining why Dr. Callahan's opinion was accorded little weight, *see* A.R. at 23, the ALJ's decision was "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citation omitted). In another portion of the ALJ's determination, he indicates that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations" because "the medical findings do not support the existence of limitations" to the extent claimed by Ms. Poole. A.R. at 22. The ALJ continued to explain, over nearly half a page of text, the medical evidence that conflicted with Ms. Poole's claims (and, by extension, Dr. Callahan's opinion). That evidence included opinions from state agency medical consultants inconsistent with Dr. Callahan's opinion.

## 2. Whether Dr. Callahan's opinion was consistent with Ms. Poole's activities

To be accorded controlling weight, Dr. Callahan's opinion must also have been consistent with other substantial evidence. The ALJ determined that Dr. Callahan's opinion was not consistent with Ms. Poole's reported activities. But Ms. Poole argues that "there is nothing about her report of activities that contradicts Dr. Callahan's opinions." ECF No. 20 at 3. The court agrees. Unfortunately for Ms. Poole, her persuasiveness on this point is unavailing because the ALJ's determination that Dr. Callahan's opinion conflicted with medical evidence is itself sufficient to affirm the ALJ's decision not to afford Dr. Callahan's opinion controlling weight.

The ALJ noted that Ms. Poole "is able to prepare dinner and do some household chores" but indicated that "[a] person with the limitations that Dr. Callahan found would not be able to cook dinner and do chores." A.R. at 23. But there is no evidence—let alone substantial evidence—to suggest that Ms. Poole's reported activities are inconsistent with the limitations Dr. Callahan describes.

Ms. Poole reported that she cooks daily for fifteen to twenty minutes, that she washes dishes for ten minutes daily, that she shops for groceries twice weekly for a half hour, and that she does simple household chores, including sweeping, vacuuming, and some laundry. The Commissioner argues that these reported activities conflict with Dr. Callahan's finding that Ms. Poole can stand only for five minutes "before needing to sit down, walk around, or lie down." A.R. at 389. But none of Ms. Poole's reported activities require her to stand for more than five minutes without sitting, walking, or lying down. Ms. Poole did not report that she stands still for fifteen to twenty minutes when she cooks or even that she stands the whole time she cooks. And washing dishes and shopping for groceries do not necessarily require more than five minutes of standing without walking around or sitting down.

Consequently, the ALJ's determination that Dr. Callahan's opinion conflicted with Ms. Poole's reported activities is not supported by substantial evidence in the record, and it certainly is not supported by substantial evidence identified by the ALJ. However, because the ALJ's determination that Dr. Callahan's opinion conflicted with medical evidence was well supported, his decision to accord Dr. Callahan's opinion little weight was not in error.

### B. THE ALJ'S EVALUATION OF MS. POOLE'S IMPAIRMENTS AND LISTING 1.02

At step three, the ALJ concluded that Ms. Poole did not have an impairment or combination of impairments that met or equaled one of the listed impairments as defined in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. However, Ms. Poole argues that the ALJ did not properly evaluate whether Ms. Poole's impairments met Listing 1.02. The court agrees that the ALJ erred in step three, but his error was harmless.

Ms. Poole argues that "specific evidence in the record was cited and supports a finding that Ms. Poole's impairments would meet Listing 1.02." ECF No. 17 at 12. She objects that "the ALJ does not address any of the specific evidence clearly laid out by Ms. Poole in support of her meeting a listing." *Id.* at 13. She further complains that "the ALJ's suggestion that no acceptable medical source has mentioned findings equivalent in severity to the criteria of Listing 1.02 is not supported by the record" because "Ms. Poole's treating source, Dr. Callahan, did observe that she had chronic pain and stiffness." *Id.* Dr. Callahan also opined "that Ms. Poole would not be able to ambulate effectively as defined by the Agency, when he stated that she could not walk more than one city block without pain, could not walk a block over rough or uneven surfaces, and would need a handrail to climb stairs." *Id.*

Under the Social Security Act,

> [t]he Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which

7

> involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1). "Under this statute, the ALJ was required to discuss the evidence and explain why he found that [Ms. Poole] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986)).

The ALJ did indicate that he had "considered all of the listings found in 20 CFR Part 404, Subpart P, Appendix 1, paying particular attention to listing 1.02 and 1.04." A.R. at 18. But the ALJ's discussion of physical impairments was exceedingly brief. Without any reference to specific evidence, he summarily concluded that "[t]he medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." *Id.* Such a terse finding places the ALJ's step three analysis "beyond meaningful judicial review." *Clifton*, 79 F.3d at 1009.

The Commissioner contends that the ALJ's factually substantiated findings at other steps in the sequential analysis support his summary conclusion at step three. The Commissioner's position relies on *Fischer-Ross v. Barnhart*, in which the Tenth Circuit held that "an ALJ's findings at other steps of the sequential evaluation process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." 431 F.3d 729, 733 (10th Cir. 2005). But in *Fischer-Ross*, the court held that the ALJ's failure to make specific step three findings was harmless error when "confirmed or unchallenged findings made elsewhere in the ALJ's decision" "conclusively preclude Claimant's qualification under the listings at step three" such that "[n]o reasonable factfinder could conclude otherwise." *Id.* at 734–35. Consequently, this court must determine whether confirmed or

unchallenged findings elsewhere in the ALJ's decision conclusively preclude Ms. Poole's qualification under Listing 1.02.

Listing 1.02 concerns major dysfunction of a joint or joints from any cause. To be considered impaired under Listing 1.02, a claimant must show

> gross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With . . . [i]nvolvement of one major peripheral weight-bearing joint (*i.e.* hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. "Inability to ambulate effectively" is defined as

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having <u>insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.</u>

*Id.* § 1.00(B)(2)(b)(1) (emphasis added). And examples of ineffective ambulation include

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out . . . shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id.* § 1.00(B)(2)(b)(2).

Considering Ms. Poole's disorder of the left ankle, the ALJ found that the disorder could reasonably be expected to cause Ms. Poole's alleged symptoms. *See* A.R. at 21. But he found that Ms. Poole's "statements concerning the intensity, persistence, and limiting effects of [her alleged] symptoms are not entirely credible." *Id.* at 22. The ALJ noted that Ms. Poole washes dishes, sweeps, vacuums, washes laundry, prepares dinner, and attends a weekly horseshoe tournament. *Id.* Those reported activities led the ALJ to give great weight to the opinions of Drs.

Donald Ferlic and Kimberlee Terry, who found that Ms. Poole can: lift and carry twenty pounds occasionally and ten pounds frequently; stand-walk six hours; sit for six hours in an eight-hour workday; push and pull without limit; climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally; and never climb ladders ropes, or scaffolds. *Id.*

The ALJ's findings, supported by Ms. Poole's own report, conclusively preclude her qualification under Listing 1.02. Each of those activities demonstrates that Ms. Poole's lower extremity functioning permits her to ambulate without the use of an assistive device that limits the functioning of both upper extremities. Consequently, the ALJ's confirmed findings at step four conclusively preclude Ms. Poole's qualification under Listing 1.02. No reasonable factfinder could conclude otherwise.[2] Thus, "any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless." *Fischer-Ross*, 431 F.3d at 735.

## IV. ORDER

For the reasons above, the administrative determination is **AFFIRMED**.

Signed March 22, 2018

BY THE COURT

*Jill N. Parrish*

———————————————

Jill N. Parrish
United States District Court Judge

---

[2] Dr. Callahan opined that Ms. Poole cannot walk one block or more on rough or uneven ground. A.R. at 389. That opinion aligns with a listed example of "ineffective ambulation." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(2). But, as the court held above, the ALJ reasonably gave little weight to Dr. Callahan's opinion.